# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **ROBERT W. PERRY,** | ) | |
|    Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:05cv00014 |
| | ) | **MEMORANDUM OPINION** |
| | ) | |
| | ) | |
| **JO ANNE B. BARNHART**, | ) | |
|   **Commissioner of Social Security,** | ) | By:   PAMELA MEADE SARGENT |
|    Defendant | ) | United States Magistrate Judge |

In this social security case, I will vacate the final decision of the Commissioner denying benefits and remand this case to the Commissioner for further consideration.

*I. Background and Standard of Review*

Plaintiff, Robert W. Perry, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying plaintiff's claims for disability insurance benefits, ("DIB"), and supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. §§ 423 and 1381 *et seq.* (West 2003). Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before the undersigned magistrate judge upon transfer pursuant to the consent of the parties under 28 U.S.C. § 636(c)(1).

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517

(4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence, but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Perry protectively filed applications for DIB and SSI on or about October 29, 2002, alleging disability as of October 4, 2002, based on an attention deficit disorder and major depression with psychotic features. (Record, ("R."), 51-53, 58, 265-67.) Perry's claims were denied both initially and on reconsideration. (R. at 34-36, 39, 40-42, 271-73.) Perry requested a hearing before an administrative law judge, ("ALJ"). (R. at 44.) The ALJ held a hearing on May 3, 2004, at which Perry was represented by counsel. (R. at 320-38.)

By decision dated June 17, 2004, the ALJ denied Perry's claims. (R. at 16-26.) The ALJ found that Perry met the disability insured requirements of the Act for DIB purposes through the date of his decision. (R. at 25.) He further found that Perry had not performed substantial gainful activity since his alleged onset of disability. (R. at 25.) The ALJ found that the medical evidence established that Perry had severe impairments, namely a personality disorder, not otherwise specified, with histrionic, antisocial and borderline features, adult attention deficit hyperactivity disorder and recurrent major depression with psychotic features, but he found that Perry did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 23, 25.) The ALJ further

found that Perry's allegations regarding his limitations were not totally credible. (R. at 25.) The ALJ concluded that Perry retained the residual functional capacity to perform work at all exertional levels that did not require working with the public. (R. at 25.) Based on Perry's age, education, work experience and residual functional capacity and the testimony of a vocational expert, the ALJ found that other jobs existed in significant numbers in the national economy that Perry could perform, including those of a janitor, a cleaner, a bagger, a food preparer, a material handler, a hand packer, a sorter and a vehicle washer. (R. at 26.) Therefore, the ALJ found that Perry was not disabled as defined by the Act and was not eligible for benefits. (R. at 26.) *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (2005).

After the ALJ issued this decision, Perry pursued his administrative appeals, (R. at 12), but the Appeals Council denied his request for review. (R. at 5-8.) Perry then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481 (2005). The case is before this court on Perry's motion for summary judgment filed July 15, 2005, and the Commissioner's motion for summary judgment filed August 17, 2005.

## *II. Facts*

Perry was born in 1968, (R. at 51, 265), which classifies him as a "younger person" under 20 C.F.R. §§ 404.1563(c), 416.963(c). Perry completed the eleventh grade, and he obtained his general equivalency development, ("GED"), diploma. (R. at 64, 257.) He has past relevant work in the restaurant industry as a cook, a server and an assistant manager. (R. at 78.) The record shows that in July 2002, three months prior to Perry's alleged onset date of disability, he reported that he enjoyed his job as

a supervisor at a supermarket. (R. at 165-66.) In October 2002, however, Perry stopped working and initiated a lawsuit for sexual harassment, which coincides with his alleged onset of disability. (R. at 68, 76, 162, 192.)

Psychological expert, Thomas Schacht, Psy.D., testified at Perry's hearing and opined that the record was replete with conflicting information, which created credibility issues. (R. at 328-30.) Schacht opined that the primary conflict in the record was Perry's description of his functional impairments, as opposed to those noted in the treatment record. (R. at 329.) He pointed out that Perry testified that he experienced significant side effects from medication, where in contrast, Perry's treating psychiatrists repeatedly reported that Perry had no side effects and no adverse medication effects. (R. at 329.) Schacht noted that the most common statement in Perry's treatment notes were statements that Perry was doing well and was in remission, statements that could be found through the time of the end of the record, which was January 2004. (R. at 329.) He stated that there were indications in the record of a personality disorder with histrionic and borderline antisocial features, however, he noted an inability to determine from the record to what extent the personality disorder may affect Perry's ability to work. (R. at 330.)

Vocational expert, Cathy Sanders, also testified at Perry's hearing. (R. at 331-37.) She was asked to assume an individual of Perry's age, education and work experience, who had no physical impairment and who was limited in his ability to interact with the public. (R. at 331.) Sanders stated that there would be jobs available in significant numbers in the national economy that such an individual could perform, including jobs as a grounds worker, a janitor, a nonconstruction laborer, a material handler, a cleaner, a stocker, a bagger, a miscellaneous food preparer, a hand packer,

a sorter and a vehicle washer. (R. at 331.) Sanders was asked to consider an individual who had moderately severe difficulty in mental functioning including the ability to maintain attention and concentration, to deal with work stress and to be reliable and punctual. (R. at 332.) Sanders stated that there would be jobs available in significant numbers in the national economy that such an individual could perform, including jobs as a vehicle washer and cleaner, a groundskeeper, a painter and a grounds crewman. (R. at 333.)

In rendering his decision, the ALJ reviewed records from Dr. Brent R. Coyle, M.D.; Wise County Behavioral Health; Eugenie Hamilton, Ph.D., a state agency psychologist; B. Wayne Lanthorn, Ph.D., a licensed clinical psychologist; and R. J. Milan, Ph.D., a state agency psychologist. Perry's attorney also submitted medical reports from Stone Mountain Health Services, Wise County Behavioral Health and Munsey Counseling Center to the Appeals Council.[1]

The record shows that Perry sought treatment from Dr. Brent R. Coyle, M.D., for an adult attention deficit disorder from February 1999 through May 2002. (R. at 100-14, 116-20.) In April 1999, Dr. Coyle reported that Perry's attention deficit disorder was under good control with medication. (R. at 117.) In July 1999, Perry reported that everything was "going good." (R. at 116.) He stated that his medication was helping and that he experienced no side effects. (R. at 116.) In March 2000, Perry reported that everything was all right, and his mood was reported as good. (R. at 114.) In April 2001, Perry reported that he had been incarcerated for three months and

---

[1] Since the Appeals Council considered this evidence in reaching its decision not to grant review, (R. at 5-8), this court also should consider this evidence in determining whether substantial evidence supports the ALJ's findings. *See Wilkins v. Sec'y of Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991).

reported being depressed. (R. at 109.) Dr. Coyle diagnosed recurrent major depression with psychotic features. (R. at 109.) In May 2001, Dr. Coyle reported that Perry's mental status had improved. (R. at 110.) Perry failed to keep his appointments in June, July and August 2001, but in February 2002 and May 2002, he reported that things were going well and that he was satisfied with his medication. (R. at 100, 102, 108.)

The record shows that Perry received counseling from Wise County Behavioral Health from June 2002 through July 2003 for his complaints of depression.[2] (R. at 121-71.) In July 2002, Perry denied symptoms of depression. (R. at 166.) He reported that he was working and that he enjoyed his job. (R. at 166.) It was reported that he appeared to be moderately depressed. (R. at 166.) It was reported that Perry had a Global Assessment of Functioning, ("GAF"), score of 45.[3] (R. at 166.) Perry was diagnosed with major depression with psychotic features and a personality disorder, not otherwise specified. (R. at 166.) On October 1, 2002, Perry reported that he was fired from Food Lion and had a lawsuit pending. (R. at 162.) His case manager completed an assessment indicating that Perry's thought processes were moderately impaired and he had a markedly abnormal mood and impaired response. (R. at 157.) On October 4, 2002, Perry reported that he had been raped by an uncle when he was 10 years old. (R. at 152.) He reported that he was then currently working as a supervisor for Food Lion. (R. at 152.) He was diagnosed with major depressive

---

[2]It appears that Perry was seen on average monthly by a case manager and quarterly by a staff psychiatrist, Dr. Charles Balaicuis, M.D., or Dr. Randall E. Pitone, M.D.

[3]The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994). A GAF of 41-50 indicates that the individual has "[s]erious symptoms ... OR any serious impairment in social, occupational, or school functioning ...." DSM-IV at 32.

-6-

disorder and attention deficit disorder. (R. at 154.) His GAF score was assessed at 50. (R. at 154.) In November and December 2002, despite Perry's reported lawsuit and problems with his parents, he reported getting along well and was described as stable and functioning normally. (R. at 139-40, 142, 145.) Perry reported that he was taking his medications as prescribed without any adverse side effects. (R. at 142, 145.) Perry reported working every day at Riggs Oil Company. (R. at 151.)

Throughout the course of Perry's treatment, he made progress toward meeting his goals. In January, April and July 2003, Perry's case manager reported that Perry demonstrated compliance with keeping all or most mental health appointments and compliance with taking medication without adverse side effects. (R. at 134, 230, 245.) Perry reported continued efforts to maintain stability throughout utilization of coping skills, insight and discussion of major issues. (R. at 134, 230, 245.) Treatment notes dated between January 2003 and January 2004, indicate that Perry was doing well and functioning adequately. (R. at 139, 142, 217, 225, 235, 241, 244, 251.) Perry's mental status examination revealed that he was alert, oriented, intelligent, cooperative and friendly. (R. at 222, 225, 229, 231, 234-36, 238, 244, 247, 252, 254.) The record indicates that Perry was mildly depressed by situational stressors. (R. at 222, 238, 242, 247, 251.) Perry's medication worked well, and his symptoms were well-controlled. (R. at 231, 234, 236, 247.) In January and March 2003, Perry's treating psychiatrist noted that Perry was in good remission. (R. at 248, 254.) In September 2003, there was no evidence of psychosis or cognitive impairments. (R. at 225-26.) Perry continued to receive treatment through July 2004. (R. at 296-313.) It was reported that Perry was doing fine and remained clinically stable. (R. at 298, 312.)

In March 2003, Eugenie Hamilton, Ph.D., a state agency psychologist, indicated

Case 2:05-cv-00014-PMS   Document 20   Filed 09/15/05   Page 7 of 14   Pageid#: 64

that Perry suffered from an organic mental disorder, an affective disorder and a personality disorder. (R. at 172-87.) She indicated that a residual functional capacity assessment was necessary. (R. at 172.) Hamilton indicated that Perry had mild limitations of activities of daily living. (R. at 183.) She indicated that Perry had moderate difficulties in maintaining social functioning and in maintaining concentration, persistence or pace. (R. at 183.) Hamilton also indicated that Perry had not experienced episodes of decompensation. (R. at 183.) Hamilton reported that Perry was capable of performing simple, unskilled competitive work as long as his psychiatric condition remained stable. (R. at 187.)

Hamilton also completed an assessment indicating that Perry was moderately limited in his ability to understand, remember and carry out detailed instructions, to maintain attention and concentration, to sustain an ordinary routine without special supervision, to complete a normal workday and work week without interruptions from psychologically based symptoms, to interact appropriately with the public, to accept instructions and respond appropriately to criticism from supervisors and to get along with co-workers without distracting them. (R. at 188-90.)

In October 2003, B. Wayne Lanthorn, Ph.D., a licensed clinical psychologist, evaluated Perry. (R. at 191-96.) Lanthorn reported that during the evaluation, Perry put forth marginal effort. (R. at 193.) Lanthorn noted that Perry was able to attend, concentrate, follow directions and complete tasks. (R. at 193.) Perry did not display significant signs of anxiety or depression. (R. at 193.) Perry reported that his medications helped with both his attention deficit disorder and depressive symptoms. (R. at 193-94.) Lanthorn reported that Perry was quite feminine in mannerism and overly dramatic, had some apparent difficulty in interpersonal relationships and may

have difficulty making adjustments on the job. (R. at 195.) Lanthorn diagnosed a personality disorder, not otherwise specified with histrionic, antisocial and borderline features, and some degree of malingering would not be ruled out. (R. at 194.) He assessed a GAF score of 55.[4] (R. at 195.)

Lanthorn assessed that Perry did not appear to be limited in his ability to understand and remember. (R. at 195.) He indicated that Perry was able to attend and concentrate, that he could complete tasks and answer questions. (R. at 195.) Lanthorn reported that Perry had some limitations in social interaction and adaptation skills. (R. at 195.) He reported that Perry would likely have difficulty sustaining a routine and that Perry appeared to be quite manipulative. (R. at 195.)

On October 16, 2003, R. J. Milan, Ph.D., a state agency psychologist, indicated that Perry was moderately limited in his ability to understand, remember and carry out detailed instructions, to maintain attention and concentration for extended periods, to perform activities within a schedule, to maintain regular attendance and to be punctual within customary tolerances, to complete a normal workday and work week without interruptions from psychologically based symptoms, to interact appropriately with the public and to get along with co-workers or peers without distracting them. (R. at 197-98.) Milan reported that Perry was able to understand, remember and carry out simple, low-stress work routines under ordinary supervision and in a reasonably reliable and independent manner. (R. at 199.) He indicated that Perry may have occasional problems concentrating and/or persisting at work routines and may exhibit some

---

[4]A GAF of 51-60 indicates that the individual has "[m]oderate symptoms ... OR moderate difficulty in social, occupational, or school functioning ...." DSM-IV at 32.

difficulties relating appropriately with others or with the public. (R. at 199.) He reported that Perry could adapt self-sufficiently and should be able to sustain work on a regular basis. (R. at 199.)

Milan also completed a Psychiatric Review Technique form, ("PRTF"), indicating that Perry suffered from an organic mental disorder, namely attention deficit hyperactivity disorder, an affective disorder and a personality disorder. (R. at 200-16.) He indicated that a residual functional capacity assessment was necessary. (R. at 200.) Milan indicated that Perry had a mild restriction on his activities of daily living. (R. at 210.) He indicated that Perry was moderately limited in his ability to maintain social functioning and to maintain concentration, persistence or pace. (R. at 210.) Perry suffered from no episodes of decompensation. (R. at 210.)

The record shows that Perry was seen at Stone Mountain Health Services from July 2004 through September 2004 as a back-up for medication as he anticipated a disruption of service from Wise County Behavioral Health. (R. at 275-94.) In September 2004, it was reported that Perry's mental status evaluation was normal. (R. at 288.)

### III. Analysis

The Commissioner uses a five-step process in evaluating DIB and SSI claims. *See* 20 C.F.R. §§ 404.1520, 416.920 (2005); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to his past relevant work; and 5) if

not, whether he can perform other work. *See* 20 C.F.R. §§ 404.1520, 416.920 (2005). If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a) (2005).

By decision dated June 17, 2004, the ALJ denied Perry's claims. (R. at 16-26.) The ALJ found that the medical evidence established that Perry had severe impairments, namely a personality disorder, not otherwise specified, with histrionic, antisocial and borderline features, adult attention deficit hyperactivity disorder and recurrent major depression with psychotic features, but he found that Perry did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 23, 25.) The ALJ concluded that Perry retained the residual functional capacity to perform work at all exertional levels that did not require working with the public. (R. at 25.) Based on Perry's age, education, work experience and residual functional capacity and the testimony of a vocational expert, the ALJ found that other jobs existed in significant numbers in the national economy that Perry could perform, including those of a janitor, a cleaner, a bagger, a food preparer, a material handler, a hand packer, a sorter and a vehicle washer. (R. at 26.) Therefore, the ALJ found that Perry was not disabled as defined by the Act and was not eligible for benefits. (R. at 26.) *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (2005).

In his brief, Perry argues that the ALJ's decision is not based on substantial evidence of record. (Plaintiff's Brief In Support Of Motion For Summary Judgment, ("Plaintiff's Brief"), at 6-7.) Perry also argues that the ALJ erred by failing to establish that there is a significant number of jobs available in the economy that he could perform. (Plaintiff's Brief at 7-10.) Perry further argues that the ALJ erred in

-11-

evaluating the severity of his mental impairment. (Plaintiff's Brief at 10-12.)

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. This court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided her decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Thus, it is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays,* 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. §§ 404.1527(d), 416.927(d), if he sufficiently explains his rationale and if the record supports his findings.

The ALJ found that Perry had the residual functional capacity to perform work at all exertional levels that did not require working with the public. (R. at 25.) Based on my review of the record, I do not find that substantial evidence exists to support this finding. The ALJ noted in his decision that he considered the opinions of Dr.

-12-

Belaicuis, as well as the other counselors, and the opinions of Lanthorn and the state agency psychologists, and found that the record did not support their findings with regard to Perry's difficulties in maintaining concentration, persistence or pace. (R. at 23.) The ALJ instead relied upon the testimony of Schacht and found that his testimony was consistent with his finding that Perry could perform work that did not require working with the public. (R. at 23.) Based on my review of the hearing transcript, Schacht testified that he was unable to determine from the record to what extent Perry's personality disorder would affect his work-related abilities. (R. at 330.) In addition, the record shows that the psychologists of record indicate various limitations of moderate severity on Perry's work-related abilities. (R. at 157, 183, 188-89, 195, 197-99, 210.) However, the ALJ only dismissed the assessments with regard to Perry's difficulties in maintaining concentration, persistence or pace. (R. at 23.) He failed to discuss the additional limitations posed on Perry's work-related abilities. As stated above, an ALJ may not reject medical evidence for no reason. *See King*, 615 F.2d at 1020. Thus, I cannot find that substantial evidence exists to support the ALJ's finding with regard to Perry's residual functional capacity.

Based on the above, I find that substantial evidence does not exist to support the ALJ's finding that Perry had the residual functional capacity to perform work at all exertional levels that did not require working with the public. Therefore, I do not find that substantial evidence supports the ALJ's finding that Perry was not disabled. Based on this finding, I will not address Perry's remaining arguments.

*IV. Conclusion*

For the foregoing reasons, Perry's and the Commissioner's motions for summary judgment will be denied, the Commissioner's decision denying benefits will be vacated, and this case will be remanded to the Commissioner for further consideration of Perry's mental impairments and their impact on his work-related abilities.

An appropriate order will be entered.

DATED: This 15th day of September, 2005.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE

-14-